Eaton vs. Dewey.

═══════════

EATON. Respondent, vs. DEWEY, imp., Appellant.

*February 26 — March 17, 1891.*

*Mortgage: Power of attorney.*

1. A power of attorney executed by C. A. D., a married woman, constitutes N. D., her husband, and three other persons named, her "attorney and attorneys in fact and in law," and gives "my said attorney and attorneys" power, among other things, "to mortgage for *any purpose*" any or all my lands, and "for me and in my name" to execute, etc., mortgages, and empowers "my said attorney *or* attorneys to borrow money for me and in my name," and to execute and deliver all proper "conveyances for any such purpose," and further authorizes and empowers her "said attorney N. D. or J. C. G., or either, whenever he shall do so, to elect for me and in my name to borrow money, and, to secure the payment thereof, to mortgage my residence and homestead property in the city of M.," and closes by generally granting unto her "said attorney or attorneys, or either of them," full power to act "jointly and severally," and gives to N. D. as her attorney full power as to any of her lands wherever situated. *Held,* that an equitable mortgage of some of her lands given in her name is not invalid because executed by N. D. alone, as her attorney in fact.

2. To the extent of a prior mortgage which the mortgagee agreed to and did pay out of the consideration of his mortgage, the loan was for the wife's benefit, and the land is legally as well as equitably bound by the mortgage.

3. Whether the balance of the consideration, for which the husband gave his individual note, was used for his own benefit or that of the wife, in the absence of any evidence of collusion between the husband and the mortgagee, the mortgage is within the power "to mortgage for any purpose," and is valid.

APPEAL from the Circuit Court for *Green* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

This is an action to foreclose an equitable mortgage, given under circumstances to the effect, that August 1, 1879, Nelson Dewey made his certain promissory note payable to the order of J. Allen Barber, two years from the date thereof, for $1,500, with interest at the rate of ten per cent. per annum, to be paid annually; that on the same day, and as attorney in fact for his wife, Nelson Dewey executed and delivered to the said J. Allen Barber a warranty deed of the lands described, and the same was recorded August 2, 1879; that said deed was in fact given upon an agreement that the same should be security for the payment of said note; that the net rents arising from said lands should be applied — *First*, in payment of taxes; *secondly*, in payment of interest on said note; and, *thirdly*, in payment of the principal; and that when the same should be fully paid, he should reconvey said lands to the said *Catherine A. Dewey;* that in consideration of said note and mortgage, the said Barber loaned to the said Nelson Dewey $1,100 in cash, and for the balance thereof agreed to pay and discharge a certain mortgage on a portion of said lands, owned by the state, of $400; that the power of attorney under which the said Nelson Dewey acted in making said equitable mortgage was executed and acknowledged by the said *Catherine A. Dewey* in the presence of two subscribing witnesses, August 12, 1875. Aside from such acknowledgment, the following is a copy thereof, to wit:

"Know all men by these presents that I, *Catherine A. Dewey*, the wife of Nelson Dewey, of the county of Grant and state of Wisconsin, have nominated, constituted, and appointed, and by these presents do nominate, constitute, and appoint Nelson Dewey, my said husband, Jared C. Gregory, of the city of Madison, George W. Ryland, of the

town of Lancaster, and John H. C. Sneclode, of the town
of Cassville, all in the said state, my true and lawful *at-
torney and attorneys* in fact and law, for me and in my
name and stead, to demand, recover, and receive, and to
settle and adjust any and all demands and debts, dues, obli-
gations, bonds, notes, actions, or causes of action belonging,
or which may at any time hereafter belong, to me, or in
which I am now or may at any time hereafter be interested;
and upon such demand, recovery, suit, receipt of payment,
settlement, and adjustment of any such demands, debts,
dues, obligations, bonds, notes, actions, causes of action,
and claims for me and in my name and stead, all proper re-
ceipts, releases, discharges, and acquittances, to execute,
seal, acknowledge, and deliver; and I do hereby further
authorize and empower my said *attorney and attorneys* in
fact and law, to grant, bargain, sell, release, quitclaim, rent,
lease, and to farm-let, *and to mortgage for any purpose,* any
and all lands and real estate, chattels, real and personal, and
personal estate which I now own, or may hereafter own, or
have any interest or title of, in, or to, wherever the same
may be situated or located in the United States of America,
or any of the said states or anywhere else; and upon any
such grant, bargain, sale, release, conveyance, quitclaim,
renting, lease, letting, and mortgage, for me, and in my
name and stead, all proper deeds, conveyances, contracts,
leases, releases, mortgage deeds, notes, bonds, and writings
obligatory, or other written instruments, under seal or
otherwise, to execute, seal, and deliver; and I do hereby
further authorize and empower my said *attorney or attorneys*
in fact and law to *borrow money* for me, and in my name,
and to release and convey any and all dower, and rights of
dower, that I now have, or may at any time hereafter have,
of, in, and to any lands and real estate and chattels real,
wherever situated and located, and for me and in my name
and stead to execute, seal, acknowledge, and deliver all

proper notes, bonds, releases, and conveyances for any such purpose; and especially I do hereby authorize and empower my said attorney Nelson Dewey, or Jared C. Gregory, *or either*, whenever *he* shall so do, to elect for me, and in my name, *to borrow* money, and to secure the payment thereof, to mortgage my residence and homestead property in the city of Madison [omitting immaterial portion]; *and generally hereby giving and granting unto my said attorney or attorneys, or either of them*, full power and authority to do and perform *jointly and severally, and without consultation with each other*, all and every act and thing whatsoever requisite and necessary to be done in and about the said premises, as fully, to all intents and purposes, as I might or could do if personally present, with full power of substitution and revocation to be exercised only by said attorney Nelson Dewey; hereby ratifying and confirming all that my said attorney or attorneys, or either of them, or their substitutes, shall lawfully do or cause to be done by virtue hereof.

"In witness whereof I have hereunto set my hand and seal this eleventh day of August, in the year one thousand eight hundred and seventy-five.

"(The words 'he shall' and 'elect' were written over erasures, before delivering.)

"CATHERINE A. DEWEY.   [Seal.]

"Signed, sealed, and delivered in presence of E. G. RYAN, A. B. BRALEY."

It further appears from the record that April 22, 1880, the said Barber paid said note and mortgage held by the state, but, instead of satisfying the same, took an assignment thereof to himself; that said J. Allen Barber died prior to the commencement of this action, that the plaintiff is a daughter of his, and one of his devisees, and acquired the note and equitable mortgage mentioned from his estate, by virtue of the same having been assigned to her by the

county court; that there is no claim of any payment having been made thereon, except such as are admitted; that the answer of the appellant consists of denials, and especially of any authority of Nelson Dewey, as such attorney in fact, to make said equitable mortgage; that the appellant never received any part of said $1,500, nor was the same for the benefit of her or her property; that she was the widow of Nelson Dewey, who died July 20, 1889; that upon the trial of the action the court found, in effect, the facts stated (except what was contained in the answer), also the filing of notice of *lis pendens*, September 26, 1889; the conveyance to the defendant railway company of a certain right of way over said lands, November 17, 1884; that *Catherine A. Dewey* paid no money or other consideration for the conveyance to or the vesting in her of the legal title to the lands covered by said equitable mortgage, that she did not know or understand that she was the owner or had title to any part of said lands until the commencement of this action; that she never had assumed any control over them, or paid any taxes upon them, or collected any rent from them, or dealt with them in any manner whatever prior to this suit; that there is no evidence to show for what purpose Nelson Dewey borrowed or used said $1,100, beyond the testimony of the appellant to the effect that it was not borrowed for her, or used in or about her separate estate, to her knowledge; that there was still due thereon the sum of $3,045.76; and that, as conclusions of law, the court found that the plaintiff was entitled to the ordinary judgment of foreclosure and sale; that from the whole of said judgment the defendant *Catherine A. Dewey* brings this appeal.

For the appellant there was a brief by *Burke & Hiles*, and *John J. Cole*, and oral argument by *J. F. Burke* and *John J. Cole*. They took the ground that, except as to the Madison property, the power of attorney gave only a joint

Eaton vs. Dewey.

power, which must be executed by all the attorneys. Coke upon Littleton, 496; *Hartford F. Ins. Co. v. Wilcox*, 57 Ill. 180; *White v. Davidson*, 63 Am. Dec. 704; *Franklin v. Osgood*, 14 Johns. 527; Cases cited in 1 Am. & Eng. Cycl. of Law, p. 335; Story on Agency, §§ 21, 42, 62, 78. The power is not coupled with any interest in the attorneys or either of them, and is in law one for the benefit of the principal and not of the agent, and it is also in express terms for her. The expression "for any purpose" is to be construed in the light of that fact and of the whole context. Broom's Legal Maxims, 646, 589; *Rossiter v. Rossiter*, 8 Wend. 494; *Baxter v. State*, 9 Wis. 45; *Rountree v. Denson*, 59 id. 527; *Chilton v. Wilford*, 2 id. 3; 1 Wait's Actions & Defenses, 125. As used here, "for any purpose" means any purpose carrying out the general intent. *Meade v. Brothers*, 28 Wis. 689; *Campbell v. Campbell*, 57 id. 288; *North Riv. Bank v. Aymar*, 3 Hill, 262; *Greenwood v. Spring*, 54 Barb. 375; *Nippel v. Hammond*, 4 Col. 214.

For the respondent the case was submitted on the brief of *W. E. Carter.*

CASSODAY, J. The only question presented for consideration is whether the equitable mortgage executed by Nelson Dewey, as attorney in fact for his wife, *Catherine A. Dewey*, was a valid exercise of authority, and binding in law upon the wife. There are three phases of the question presented:

1. Assuming that the loan was for a legitimate purpose, it is claimed that it could only be made, and the mortgage only be given, by the joint action of the four persons named in the power of attorney. The first part of the power names four persons, including Mr. Dewey, and is general to her "said attorney *and* attorneys," and also her "said attorney *or* attorneys," and extends to "any and all lands and real estate . . . wherever the same may

Eaton vs. Dewey.

be situated or located, in the United States of America, or any of the said states, or anywhere else." Following these general provisions, she thereby "especially" authorized and empowered her "said attorney, Nelson Dewey, *or* Jared C. Gregory, *or either*," to act in relation to her residence and homestead in Madison. Following that special provision, the power continues: "And *generally* hereby giving and granting unto my said attorney *or* attorneys, *or either of them*, full power and authority to do and perform jointly *and severally*, and without consultation with each other, all and every act and thing," etc., "with full power of substitution and revocation, to be exercised *only by said attorney Nelson Dewey*." These general provisions manifestly gave full power to Mr. Dewey as to any and all lands wherever situated, and were not limited to the lands in Madison; for otherwise the distributive words and the disjunctives therein would have been superfluous, since he or Gregory had therein previously been expressly authorized to act alone as to the lands in Madison. We conclude that the equitable mortgage was not invalid by reason of being executed by Mr. Dewey alone, as such attorney in fact.

2. That portion of the consideration of the equitable mortgage which consisted of Barber's agreement to pay and discharge the $400 note and mortgage executed in 1858, and held by the state, and which was in fact paid to the state by Barber, was manifestly for the use and benefit of *Mrs. Dewey*, since it relieved a portion of the lands covered by the equitable mortgage from a corresponding burden. This is virtually conceded. To that extent, therefore, the mortgaged premises were not only legally bound, but in equity and good conscience ought to have been so bound.

3. The question recurs whether the equitable mortgage was a valid security for the repayment of the $1,100 cash actually advanced and loaned thereon. The powers con-

ferred by the instrument set forth in the foregoing state-
ment by *Mrs. Dewey* were very sweeping. She thereby
expressly authorized and empowered her said attorney in
fact and law "to mortgage *for any purpose* any and all
lands and real estate" which she then owned, or might
thereafter own, or have any interest or title of, in, or to
wherever the same might be situated; "and upon any such
grant, bargain, sale, release, conveyance, quitclaim, renting,
lease, letting, and mortgage," for her, and in her name and
stead, to execute, seal, and deliver "all proper deeds, con-
veyances, contracts, leases, releases, mortgage deeds, notes
. . . or other written instruments under seal or other-
wise;" and her said attorney in fact was therein authorized
and empowered "to borrow money" for her and in her
name, etc. The power of attorney, as already indicated,
seems to have been drawn with the view of giving to any
one of her attorneys, and especially to Mr. Dewey, plenary
power of disposing of and mortgaging any and all lands which
*Mrs. Dewey* then owned, or the title to which might there-
after be put in her name. *Mrs. Dewey* testified and the
court found, in effect, that she paid no consideration for the
land covered by the equitable mortgage, and did not know
that the title was in her at the time it was executed, nor
until the complaint in this action was served upon her. As
she knew nothing about the transaction of giving the
equitable mortgage, she of course knew nothing as to what
Mr. Dewey did with the $1,100 in cash which he received
from Barber as a part of the consideration for that mort-
gage. He may possibly have used it for her benefit, or the
benefit of some of her property. There is no evidence of
any collusion between him and Barber. At all events, the
transaction appears to have been in good faith, so far as
Barber was concerned. It could not be expected that
Barber should control the application of the money after it
was received by Mr. Dewey. If the latter had the authority

The State ex rel. Grady vs. The Chicago, Madison & Northern R. Co.

to borrow the money as he did, then he had the right, as against Barber, to control the money after he got it. True, the $1,500 note was signed by Mr. Dewey personally, but it is virtually confessed that $400 of the amount was to relieve the land from a mortgage then upon it, and hence for the benefit of *Mrs. Dewey's* property. The balance may have been also used for the benefit of herself or property without any knowledge on her part of the fact. The case seems to be clearly distinguishable from any in this court cited by counsel. In view of the sweeping language of the power of attorney, we must hold that Mr. Dewey was authorized to execute the equitable mortgage as he did.

*By the Court.*— The judgment of the circuit court is affirmed.